Application of ARKANSAS LOUISIANA GAS COMPANY, a Domesticated Corporation, for an adjustment in its rates and charges for Gas Utility Service in the State of Oklahoma, Appellee,

v.

SUN OIL COMPANY OF PENNSYLVANIA, a Pennsylvania Corporation, Appellant.

No. 47113.

Supreme Court of Oklahoma.

July 6, 1976.

William L. Anderson, Oklahoma City, for appellee, Arkansas Louisiana Gas Co.

Stephen A. Collinson, Asst. Gen. Counsel, Corp. Commission of Oklahoma, Oklahoma City, for appellee.

C. Harold Thweatt, Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, John A. Ladner, Tulsa, for appellant, Sun Oil Co.

LAVENDER, Justice.

Arkansas Louisiana Gas Company (Arkla), appellee, by application to the Corporation Commission (Commission) on July 20, 1973, sought an increase in its rates and charges for furnishing gas service as a public utility. Public hearing was held on October 17, 1973, with proper notice. Sun Oil Company of Pennsylvania (Sun) appeared in opposition as an industrial customer of Arkla. As a result of this hearing, the Commission entered its Order No. 101542, dated December 3, 1973. The order granted increased rates. Sun as an industrial user appeals.

After this appeal was filed, this court rendered its decision in *Tecumseh Gas System, Inc. v. State*, Okl., 537 P.2d 421 (1975). Sun, by supplemental brief, argues that decision requires reversal as to the order appealed. We do not agree. There no attempt was made to establish a rate base and a percentage of return on that base. The evidence as to the rate base was meager and probably insufficient. The rate base claimed by the utility and that claimed by the Commission staff were extreme in variance from approximately $1,500,000 to $40,000. Here the utility sought to establish rate base value of $40,000,000 as opposed to the Commission staff's adjustment to $37,000,000. The difference comes not from a baisc conflict in evidence as to the rate base value, but including or excluding certain few items from the rate base calculation, i.e. property held for future use, construction work in progress, cash working capital, ad valorem tax accruals, and deferred federal income tax. The Commission's order determined a fair value of the utility's plant in service of 37 million to 40 million dollars. It found the percent of return under the increased rates to be 7.9% calculated on the 37 million dollar base and 7.35% calculated on the 40 million dollar base. The order acknowledged the difficulty in establishing an exact base caused by inherent variables and found the return "in the neighborhood" of 7.5%. Because of *Tecumseh, supra,* we do not endorse such a determination by the Commission. However, *Tecumseh, supra,* does not require reversal. The Commission did consider a rate base and found a percentage of return. That rate base and percentage of return were expressed in a minimum and maximum with a variance in the percent of return of .55% and to be "in the neighborhood of 7.-5%." That variance of approximately ½ of 1% does not destroy the sufficiency of the determination of the reasonableness of the return. There is sufficient compliance with the ruling under *Tecumseh* to uphold the order here appealed.

Sun argues discrimination under the rate schedule for a cost of service criteria was determined by the Commission as not controlling. Such cost for a volume user, such as an industry, as compared to a residential user in proportion to the amount of gas sold allows a much higher profit on the volume sale resulting in a 25% return as compared to the 7.5% return found reasonable by the Commission.

The Commission's order recognized "(i)n the past the cost of service was paramount." By its order here, it rejected that as the controlling principle in arriving at a rate structure. The Commission considered and the order states:

"In arriving at such a rate structure, consideration must be given to two competing principles: first, the cost of service declines on the average with an increasing amount of gas purchased by an individual customer, thus justifying a reduced price with increased purchases; and second, that each unit of natural gas has the same energy value regardless of the amount a customer uses, thus suggesting a similar price per unit without regard to amount of usage."

The order applies these two principles. It says:

> "With this Order, virtually all of the Applicant's rates will be made uniform, subject solely to the declining price per MCF with the successive steps of increased usage."

A review of the order finds that is correct. All users are charged the same amount except for a reduced price with successive steps of increased usage.[1] The lowest rate per MCF for a residential user is 56¢. The industrial user on a quantity use base receives a further reduction to 44¢ per MCF and ultimately to 36¢ per MCF.

■ As agreed by Sun in its original brief, not all discrimination between customers is unlawful with the prohibition applying only to those differences in treatment which are unjust or unreasonable. See also *Fretz v. City of Edmond*, 66 Okl. 262, 168 P. 800 (1917). As demonstrated above, we do not find rate structure in the Commission's order here under review to be unjustly discriminating against industrial users and Sun.

■ "There is no precise statutory or court announced basis for determining the justness or reasonableness of class rate level structures or relationships, the court generally holding that rate making is the responsibility of a regulatory commission effectively exercising its discretion upon sufficient evidence before it." *Re Lincoln Service Corp.*, 1 PUR 4th, 511, Wyoming Public Service Commission (1973). "It is universally recognized that the fixing of rate schedules for public utilities is a legislative process, and that a public service regulatory body acts in a legislative capacity in approving rate schedules." *Wiley v. Oklahoma Natural Gas Company*, Okl., 429 P.2d 957 (1967). In *Wiley, supra,* we said by the Amendments in 1941 to Article 9 of our Constitution, this Court's power to review legislatively the rate order of the

---

1. Appealed order No. 101542 reads in part: "IT IS THEREFORE THE ORDER OF THE COMMISSION that Applicant is hereby granted authority to file tariffs forthwith as follows:

Residential

| | | | |
|---|---|---|---|
| First | | MCF or fraction thereof | 1.90 per month |
| Next | 2 | MCF | .90 per MCF per month |
| Next | 97 | MCF | .71 per MCF per month |
| Over | 100 | MCF | .56 per MCF per month |

Commercial

| | | | |
|---|---|---|---|
| First | | MCF or fraction thereof | 1.90 per month |
| Next | 2 | MCF | .90 per MCF per month |
| Next | 97 | MCF | .71 per MCF per month |
| Next | 1900 | MCF | .56 per MCF per month |
| Over | 2000 | MCF | .44 per MCF per month |

\* \* \*

Industrial Gas service and Sales for Resale

| | | | |
|---|---|---|---|
| First | | MCF or fraction thereof | 1.90 per month |
| Next | 2 | MCF | .90 per MCF per month |
| Next | 97 | MCF | .71 per MCF per month |
| Next | 1900 | MCF | .56 per MCF per month |
| Next | 2000 | MCF | .44 per MCF per month |
| Over | 4000 | MCF | .36 per MCF per month "

\* \* \*

Commission was quite specifically cancelled. " * * * our review 'shall be judicial only,' and 'shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence'."

██ Sun argues no rate increase was necessary for 1972 was not a proper test year. This was due to high priced purchase of gas by Arkla from another utility necessary to satisfy the demand. Such purchases will not be necessary in subsequent years because of completion by Arkla of a pipeline to a lower cost gas supply dedicated to it. It also argues the overall profits of Arkla should have been given more weight. New conditions, such as future gas supplies and new facilities not in service at time of this application, might be basis for future adjustments of rates. Such items are not controlling here. Neither is the overall profit of the company from its conglomerate operations and properties that are not a proper consideration in Arkla's rate base value for furnishing gas utilities to its Oklahoma customers. The Commission found the rate increase allowed in its order to generate a return of 7.35% on the maximum rate base of 40 million dollars of 7.95% on the minimum rate base of 37 million dollars or "in the neighborhood of 7.5%." It determined this to be a reasonable return under present conditions. We believe that finding is sustained by the law and substantial evidence.

We hold the order here appealed did not violate right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma. That the findings and conclusions of the Commission are sustained by the law and substantial evidence. Const. Art. 9, § 20.

Affirmed.

All of the Justices concur.