575 P.2d 624 (1978)
Application of SOUTHWESTERN BELL TELEPHONE COMPANY to Establish New Intrastate Rates, Tolls and Charges Applicable to Certain Intrastate Telephone and Telecommunication Services Furnished within the State of Oklahoma and to Authorize Directory Assistance Charges.
ANSWERING, INC., Answering Tulsa Company, and Security Telephone Answering Service Company, Appellants,
v.
The STATE of Oklahoma, Oklahoma Corporation Commission, Southwestern Bell Telephone Company, Appellees.
No. 49214.
Supreme Court of Oklahoma.
February 21, 1978.
Geo. L. Verity, Verity, Brown & Verity, Oklahoma City, for appellants.
Southwestern Bell Telephone Co. by Robert D. Allen, Oklahoma City, for appellees.
*625 DOOLIN, Justice:
Southwestern Bell Telephone Company (Bell) made application to the Corporation Commission (Commission) for an increase in its intrastate charges and tariffs for the State of Oklahoma, including rates for installation. Appellants, several answering service companies, intervened to protest the installation service charge increase as it applied to them. Appellants claimed public convenience and necessity required Commission to exempt them from any increased installation charge. They suggest Commission provide for a special rate and tariff for all such answering services using a special type circuit involving concentrator-identifiers[1] because their use greatly simplifies installation.
*626 At the hearing appellants introduced a stipulation. The stipulation referred to testimony appellants' witnesses would give if they appeared. Appellants offered no further evidence and did not cross examine Bell's witnesses.
The stipulation, the sole basis for this appeal, provided the following as summarized in appellant's brief:
1. That the Answering Companies could produce numerous persons prominent in the cities of Tulsa and Oklahoma City that would testify to all the stipulated facts.
2. That the services rendered by the Answering Companies are necessary to the business community and provide a 24-hour answering service for the business and professional communities.
3. That the Answering Companies at great expense employ concentrator identifiers which simplifies answering service and results in considerably less work and expense on the part of the telephone company in installing answering service extensions than in the installation of the average off-premises extension.
4. That such service is necessary to medical doctors, the medical profession, various technical services, suburban fire departments and a large segment of the business community.
5. That such services are a great necessity to the business community and that the public need requires that rates and charges made by the Bell Company to the public using the service be adjusted in such a manner as to promote the well being of the community and that the required increase in revenues needed by the Bell Company from time to time should be distributed insofar as telephone answering service is concerned so as to enhance the utility of such services to the using public.
6. That those answering services which use concentrator-identifiers, which obviates the necessity of special circuits, creates a special circumstance which should be recognized by the Commission as a special class of service.
7. That increasing installation charges for off-premises extension for telephone answering service customers would be a great hindrance and detriment to the public and proper operation of those telephone answering services employing concentrator-identifiers; and that it is necessary for the general public having need of and using telephone answering services for the telephone company to obtain the necessary increase in revenues that should be borne by telephone answering services by obtaining such increased revenues from the regular monthly charges rather than by increasing the installation charges.
8. That it would enhance the general good of the community if the Commission in increasing the revenues of the Bell Company granted them twenty-five cents per month per extension to the telephone answering services with concentrator-identifiers and not increase installation charges at all.
9. That such arrangement of charges to a twenty-five cent monthly rate rather than increased installation charges will enhance and facilitate the rendering of telephone answering services in those towns and communities within the State of Oklahoma serviced by the Southwestern Bell Telephone Company.
One portion of Bell's request was a "Three element Service Charge Plan" which divided installation services into three phases and provided a separate rate for each phase. After hearing, Commission issued its order adopting this plan. The order did *627 not grant appellants' request for exemption from the increase. They appeal this omission.
Appellants urge this court to order Commission to amend its order to provide the total charges for installing a customer's telephone in the office of an answering service remain at $10.00. Appellants submitted the following plan to Commission in lieu of the increase. Appellants claim their plan would provide equal revenue for Bell while avoiding the hardship of the increased installation charge.

 "Charges to Telephone Answering Service
 in connection with the use of
 Concentrator-Identifiers 
 Requested by Suggested by
 Present Southwestern Telephone
 charge Bell Telephone Answering
 Monthly basic
 charge: $75.00 $80.00 $86.25
 Monthly subscriber
 Charge: 3.00 3.20 3.45
 Installation charge: 10.00 16.00 10.00 "

Commission set Bell's fair value rate base at $533,699,292.00 and allowed an 11 1/2% to 12 1/2% rate of return. Based on these figures, Commission found a revenue deficiency presently existed in the amount of $14,420,000.00. It granted various rate increases and denied others. It approved Bell's three element service charge as being reasonable and fair.
Appellants do not dispute these findings and order of the Commission or that Bell was entitled to a rate increase in order to realize the stated rate of return. They claim the stipulation of testimony conclusively shows public convenience and necessity demand preferential treatment be given to them as a class of consumers. They claim under Blakeley v. Corporation Commission, 332 P.2d 1103 (Okl. 1958) Commission was obligated to grant appellants' protest. In Blakeley this court affirmed a Commission order which was based on uncontroverted facts showing a requested service was required. The situation here is not the same. Appellants are asking to be exempted from a Commission rate order. Commission considered appellants' stipulated testimony and based on its expertise refused to grant the relief sought.
A utility is entitled to earn a reasonable return on its investment.[2] Commission acts in a legislative capacity in establishing rates necessary to realize this return. This court will not reverse if it finds Commission has regularly pursued its authority and that its findings and conclusions are sustained by the law and substantial evidence.[3]
Appellants argue because installation charges were increased by a higher percentage than the overall increase, the order is discriminatory. There is no rule that each phase of a utility service must be uniformly increased. Not all discrimination between utility customers is unlawful. Prohibition applies only to those differences in treatment which are unjust or unreasonable.[4] Certainly it is conceivable that different telephone installations involve different amounts of work. It was neither unjust nor unreasonable for Commission to refuse to grant preferential treatment to appellants.
Appellants further contend it is discriminatory to base installation charges on "costs of service" while other services were rated on basis of "value of service". This complaint too is unfounded. There is no evidence in the record that installation service charges were based only on costs. Further there is certainly more than one theory or formula for determining rates which might be adopted and followed by Commission. Neither "cost of service" nor "value of service" is exclusive or a more favored formula.[5]
*628 In addition to the above, in their brief, appellants argue the order is anti-competitive in that Bell has a call forwarding service for which it charges only $5.00 for installation. This point was not urged as error in appellants' petition in error and although it was suggested in their protest, it was not discussed in the stipulation. Further appellants offered no evidence at hearing of the allegedly competitive Bell service. In Oklahoma Users of Public Utilities Services v. Southwestern Bell Telephone Co. of Oklahoma, 289 P.2d 968 (Okl. 1955) we held where protestants to a telephone rate increase did not raise a specific objection in the hearing before the Commission, they could not use that theory for first time before the Supreme Court. Further because this theory was not assigned as error, it is not an issue before this court.[6]
The burden of proving the rates fixed by the Commission to be confiscatory is upon the party complaining. Appellants failed to meet this burden. The order is sustained by the law and substantial evidence.
AFFIRMED.
LAVENDER, V.C.J., and DAVISON, WILLIAMS, IRWIN, BERRY, BARNES and SIMMS, JJ., concur.
NOTES
[1] Concentrator-identifiers are units of equipment utilized by answering service companies in lieu of separate circuits for each customer. A concentrator in the central telephone office channels the customers' extension lines into six talking paths and twelve ringing paths. The identifier then channels these circuits to their respective positions on the answering services' switchboard, thereby permitting the answering service to receive the message of as many as 100 customers over the six lines.
[2] Wiley v. Oklahoma Natural Gas Company, 429 P.2d 957 (Okl. 1967).
[3] Arkansas Louisiana Gas Company v. Sun Oil Company of Pennsylvania, 554 P.2d 14 (Okl. 1976).
[4] id.
[5] Southwestern Bell Telephone Co. v. State, 204 Okl. 225, 230 P.2d 260 (1951).
[6] Bredouw v. Wilson, 208 Okl. 393, 256 P.2d 421 (1953).